IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALMAZ AND GIRMA TAMERU, | : | |
|     Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| W-FRANKLIN, L.P., | : | |
| dba SHERATON PHILADELPHIA | : | |
| CENTER CITY, | : | |
|     Defendant. | : | NO. 07-1965 |

**MEMORANDUM AND ORDER**

Gene E. K. Pratter, J.                                                                                  September 11, 2008

Plaintiff Almaz Tameru asserts that she slipped and fell on a patch of ice just outside the entrance to the hotel formerly known as the Wyndham Franklin Plaza Hotel. Mrs. Tameru alleges that she sustained injuries, including damage to her right ankle and hip, as a result of the Hotel's failure to properly maintain its entryway. Mrs. Tameru and her husband, Girma Tameru, commenced this action by writ of summons in the Court of Common Pleas of Philadelphia, and the original defendants removed the case to federal court.[1]

Presently before the Court is the Hotel's Motion for Summary Judgment ("Motion"), which Mr. and Mrs. Tameru oppose. The Hotel argues that Mr. and Mrs. Tameru's claims must be dismissed (1) because Mr. and Mrs. Tameru cannot recover against the Hotel under Pennsylvania's hills and ridges doctrine and (2) because Mr. and Mrs. Tameru have presented no evidence that the owner of the Hotel had (or should have had) notice of any dangerous condition. For the reasons set

---

[1] Mr. and Mrs. Tameru initially sued a variety of defendants, including Wyndham Hotels & Resorts, LLC. However, on March 3, 2008 the Court signed a stipulation adding W-Franklin, L.P. as a defendant and dismissing all other defendants (Doc. No. 25). Accordingly, W-Franklin, L.P. is the only remaining defendant.

1

forth below, the Court will grant summary judgment for Defendant.

**I. LEGAL STANDARD**

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable fact-finder could possibly hold in the non-movant's favor with regard to that issue. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. Celotex, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of

summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

**II. BACKGROUND**

**A. Procedure**

To describe the background of this case, the Court sets out those facts of record that are undisputed. Moreover, they are construed in the light most favorable to the Tamerus. However, the Court disregards those factual allegations that Mr. and Mrs. Tameru make without any evidentiary support from the record. See, Celotex, 477 U.S. at 322-23; Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment). The following factual recitation separately notes those instances where Mr. and Mrs. Tameru dispute factual contentions made by Defendant, but provide no evidentiary basis from the record for those disputes, and, in that case, the Defendant's factual contentions are treated as undisputed. See, Blaylock v. City of Philadelphia, 504 F.3d 405, 413 (3d Cir. 2007) (citing Anderson) (when the record contradicts a party's description of the facts, it does not create a genuine dispute). The Court has accepted as true all other factual contentions made by Mr. and Mrs. Tameru and construed them in the light most favorable to them.

**B. Facts of Record**

Mrs. Tameru works for the Parkway Corporation which operates the parking garage located in the same building as the Hotel. On February 1, 2005, Mrs. Tameru was scheduled to work from 10:00 p.m. until 6:00 a.m. When she was driving to work from her home in Yeadon, Pennsylvania, she saw snow and ice on the roads, and as a result, she drove slower. Mrs. Tameru remembers that a

3

snow storm had occurred a day or two before.

When Mrs. Tameru arrived at the parking garage, she observed that there was snow piled on the sides of the driveway, and the middle area was shoveled.[2]  She entered the garage, clocked in for work, and went to the cashier's area.  Mrs. Tameru then called her manager to ask permission to use the restroom and get a cup of coffee.  He agreed, so she entered the Hotel through the parking garage. When Mrs. Tameru left the Hotel to return to work, she walked out of the front doors and down two or three steps.  She then slipped and fell.  Before she fell, she noticed that the walkway was wet, but she did not see any ice.

Mrs. Tameru avers that she fell after "stepping or otherwise coming into contact with a patch of ice located upon the surface of the entranceway" of the Hotel.  Complaint ¶ 10.  Although she did not see the ice prior to falling, she testified that after she fell, she saw a patch of black ice with a skid mark in it.  Mrs. Tameru did not touch the ice and does not know how large the patch of ice was.

---

[2]After the hearing on the pending Motion, Plaintiffs filed a Supplemental Response seeking leave to introduce the deposition testimony of Edwin Perry, the assistant manager of the garage where Ms. Tameru worked at the time of her accident.  Mr. Perry testified that on the day of the accident, garage employees applied salt to the ramp leading into the garage.  Plaintiffs' Supplemental Response, Ex. 1 at 36-37.

Defendant objects to the supplementation of the record with Mr. Perry's testimony, arguing that the testimony is irrelevant.  Defendant notes that Mr. Perry was not a Hotel employee and, thus, cannot impute knowledge of alleged dangerous conditions to the Hotel or its employees.  Further, Defendant argues that the salting of the ramp at the parking garage, an area removed from the entrance to the Hotel, provides no evidence of a dangerous condition existing at the exact location where Ms. Tameru fell.  Defendant's Response to Plaintiffs' Request to Supplement the Record at 3.

Because the law requires that there be actual or constructive notice of a specific hazardous condition before Mr. and Mrs. Tameru can recover from Defendant, see, Mills v. Sears, 1998 U.S. Dist. LEXIS 5893, at *8 (E.D. Pa. April 28, 1998), information about a garage physically removed from the accident location and neither owned nor operated by the Hotel is irrelevant and not helpful to resolve the issues before the Court.  Therefore, it has not been accepted into this record.  The Court, having considered this request on its evidentiary merits, does not reach the issue of whether Plaintiffs' procedural delay in offering the material is dispositive.  However, the Court notes that in matters of procedure, the Federal Rules of Civil Procedure would apply, rather than the Pennsylvania Rules that Plaintiffs rely upon.

After Mrs. Tameru fell, an unknown person waiting for a taxi or valet helped her to her feet. She was escorted into the Hotel, and someone called Hotel security. Cabell Brown, a Hotel security guard, administered first aid to Mrs. Tameru and spoke with her about the accident. After receiving first aid, Mrs. Tameru showed Mr. Brown the area where she fell, the area in front of the Hotel's front double doors known as the "port area." Mr. Brown prepared an incident report that states that Mr. Brown was called about the accident at 10:46 p.m. and arrived at Mrs. Tameru's location near the front desk at 10:48 p.m. See, Motion, Ex. L.

Mr. Brown testified during his deposition that about 15 minutes after Mrs. Tameru's accident occurred, he examined the area where she fell and noticed that it was wet, but not icy. Motion, Ex. K at 24, 26-29. Mrs. Tameru told him that she had slipped on ice, so he was looking for ice. Id. at 24. He did not know where the water came from, but thought that people may have tracked the water in from the street. Id. at 33. He believed that the water came from snow that had previously fallen in the area. Id. at 34.

Mr. Brown testified that security personnel examined the perimeter of the Hotel three times during each shift. Id. at 41. Mr. Brown's security log from February 1, 2005 states that he toured the perimeter of the Hotel three times during his eight and a half hour shift, and during those tours, he specifically examined the port area twice, first at 15:23 (3:23 p.m.) and again at 21:17 (9:17 p.m.). See. Motion, Ex. M.[3] Mr. Brown testified that during tours of the Hotel property, he looks for problems such as obstacles blocking entrances and exits, general hazardous conditions, and icy conditions. Motion, Ex. K at 43-44. Mr. Brown testified that he did not notice any icy or dangerous conditions during his inspections or patrols on the night in question. He testified that if he had

---

[3]The report states that Mr. Brown also examined the perimeter of the Hotel at 19:36 (7:36 p.m.), but the report entry regarding his 19:36 inspection does not specify whether Mr. Brown specifically examined the port area. However, Mr. Brown stated during his deposition that he did examine the port area during all three of his perimeter inspections on the night of the accident. See, Motion, Ex. K at 41-45.

5

noticed anything dangerous, he would have reported it to maintenance and noted it in the security log. Id. at 45-46.

Maximillian Herman, director of security for the Hotel, testified during his deposition that he had never seen and was not aware of icy conditions ever existing in front of the Hotel where the accident occurred. He stated that the area in question is close to the building and is protected by an overhang. Motion, Ex. N at 20. However, he acknowledged that pedestrians sometimes track water and snow into the area . Id. at 17. He also acknowledged that at certain temperatures water will turn to black ice. Id. at 18.

## III. DISCUSSION

### A.   Pennsylvania's Hills and Ridges Doctrine

Pennsylvania's "hills and ridges" doctrine shields land owners or occupiers "from liability for generally slippery conditions resulting from ice and snow" so long as the property owner or occupier "has not permitted ice and snow to unreasonably accumulate in ridges or elevations" that remain for an unreasonable amount of time. Convery v. Prussia Associates, 2000 U.S. Dist. LEXIS 2070, at *5 (E.D. Pa. March 1, 2000) (citing Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. 1997)). However, the "hills and ridges" doctrine applies only in cases where the snow and ice at issue are the result of "an entirely natural accumulation, following a recent snowfall." Harvey v. Chamberlin, 901 A.2d 523, 526 (Pa. Super. 2006) (quoting Bacsick v. Barnes, 341 A.2d 157, 160 (Pa. Super. 1975). "[T]he protection afforded by the doctrine 'is predicated on the assumption that '[t]hese formations are [n]atural phenomena incidental to our climate,'" Id. (quoting Rinaldi, 176 A.2d at 625). The parties in this action agree that Hotel patrons were tracking water and, possibly, snow into the entryway where Mrs. Tameru fell. Accordingly, an issue of material fact remains as to whether the ice which allegedly caused Mrs. Tameru's fall was the result of a wholly natural

6

phenomena, and the "hills and ridges" doctrine cannot provide a basis for the granting of summary judgment.

**B.      Defendant's Knowledge of the Dangerous Condition**

The Hotel argues that even if the "hills and ridges" doctrine does not bar the Tamerus' case, the Court must dismiss the suit due to a lack of duty.  The Hotel asserts that it did not owe any duty to Plaintiffs because it had no notice of the alleged dangerous condition which allegedly caused Mrs. Tameru to fall.

Although a possessor of land owes a duty to protect from foreseeable harm members of the public using his land, such a duty is not absolute.  Carrender v. Fitterer, 503 Pa. 178, 185 (1983). Pennsylvania courts have adopted Section 343 of the Restatement (Second) of Torts, which specifically limits the liability of possessors of land to the public as follows:

> A possessor of land if subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Id.  (citing Restatement (Second) of Torts § 343).  See also, Colihan v. U.S, 1997 U.S. Dist. LEXIS 3606, at *8-9 (E.D. Pa. March 25, 1997).  Accordingly, absent notice of a dangerous or defective condition, a land owner cannot be liable to an invitee injured by such a condition.  Myers v. Penn Traffic Co., 414 Pa. Super. 181, 185 (1992) (to be held liable, a defendant "must have notice of the harmful condition.)

In order to prevail in this case, Mr. and Mrs. Tameru must produce "evidence which proves that the property owner deviated in some way from his duty of reasonable care under the circumstances."  Mills, 1998 U.S. Dist. LEXIS 5893, at *5 (quoting Zito v. Merit Outlet Stores, 647

7

A.2d 573, 575 (Pa. Super. 1994)).  In order to do so, they must prove that the Hotel had notice of the hazardous condition by showing that "the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition."  Id.  Mr. and Mrs. Tameru have introduced no evidence that the Hotel had any actual notice of the alleged hazardous condition outside the Hotel, so they must demonstrate that an issue of material fact remains as to whether the Hotel had constructive notice of the hazard, that is, whether the Hotel should have known of the hazardous condition.  In order to find the Hotel had constructive notice, Mr. and Mrs. Tameru must "present some evidence that would allow a jury to reasonably infer that a hazardous condition was present for a reasonable amount of time to allow for discovery of the condition."  Id. (citing Evans v. Canteen Corp., 1995 U.S. Dist. LEXIS 8103, at 2 (E.D. Pa. June 13, 1995); Gales v. U.S. 617 F. Supp. 42, 44 (W.D. Pa. 1985); Parker v. McCrory Stores Corp., 101 A.2d 377, 378 (Pa. 1954); Swift v. Northeastern Hosp. Of Philadelphia, 690 A.2d 719, 722 (Pa. Super. Ct. 1997), Moultrey v. Great A & P Tea Co., 422 A.2d 593, 596 (Pa. Super. Ct. 1980)).

In this case, the Hotel argues that it had no notice of any dangerous condition existing where Mrs. Tameru fell and, thus, could not take remedial measures to correct the condition.  In fact, at 9:17 p.m., according to the evidence, Mr. Brown checked the perimeter of the Hotel and examined the very area in which Mrs. Tameru fell shortly thereafter.  Motion, Ex. M.  He testified at his deposition that he did not see ice or any other dangerous or hazardous conditions at that time. Motion, Ex. K at 45-46.  The Hotel avers that it was first notified that there was an alleged dangerous condition near the entry to the Hotel *after* Mrs. Tameru's fall when Hotel security was called at 10:46 p.m.  Motion, Ex. K at 46.

Further, the Hotel asserts that it took reasonable measures to discover and prevent dangerous or hazardous conditions from existing on the premises.  The Hotel's security department patrolled and inspected the exterior of the Hotel at least three times per shift.  See, Motion, Ex. G ¶¶ 33-34,

8

Ex. K at 41.  On such patrols, security guards looked for a variety of potential problems, including obstacles blocking entrances and exits, and icy conditions.  See, Motion, Ex. K at 11-12.  Further, the Hotel's director of security testified that he had never seen ice in the area where Mrs. Tameru fell and was not aware of ice ever forming in the Hotel's entryway, an area protected by an overhang. Accordingly, the Hotel asserts that it had no constructive notice of the ice that allegedly caused Mrs. Tameru's fall.  Thus, the Hotel argues that the record, even when considered in the light most favorable to Mr. and Mrs. Tameru, clearly demonstrates that the Hotel did not have notice of the alleged dangerous condition despite the exercise of reasonable diligence and, thus, it owed Plaintiffs no further duty and breached no duty that it did owe.

Mr. and Mrs. Tameru respond by arguing that facts and inferences from the record demonstrate that the Hotel had constructive notice of the hazardous condition which caused Mrs. Tameru to fall.  Specifically, Plaintiffs identify the following information:

> a. Mrs. Tameru testified at deposition that ice caused her to fall.  Motion, Ex. H at 54-55, 59.
>
> b. Mrs. Tameru testified that there was snow piled on the sides of the driveway going into the parking garage.[4]  Id. at 38.
>
> c. Mr. Brown testified at deposition that when he inspected the area of the fall, the area was wet.  Motion, Ex. K at 33-34.
>
> d. Mr. Brown testified that Hotel patrons were tracking water into the Hotel lobby.  Id. at 34-35.
>
> e. George Wright, Plaintiffs' meteorological expert, opined that prior to 8:00 p.m. on

---

[4]This fact is not relevant to the Court's present consideration.  As explained in note 2, supra, conditions at a neighboring parking garage do not assist the Court in determining whether the Hotel had constructive knowledge of a hazardous condition just outside its main entryway, an area that is not connected to the garage.

9

        February 1, 2005, the prevailing temperature was above freezing.  Plaintiff's Response to Defendants' Motion for Summary Judgment ("Response"), Ex. 2 at 16-17.

        f. Mr. Wright opined that the weather conditions outside the Hotel on the evening in question were such that the temperature had reached freezing by 8:00 p.m. and had fallen below freezing to 30 degrees Fahrenheit at the time Mrs. Tameru fell.  Response, Ex. 2 at 17, 19.

Mr. and Mrs. Tameru assert that it follows from the foregoing information that "since the hotel had notice that patrons were dragging water into the lobby, that there had to be water outside as well....The temperature was such that any prudent person would have taken steps to salt the wet area realizing it would be freezing."  Response § III.B.2.  Further, Plaintiffs argue that they have presented an expert report by Mr. Wright opining that the presence of black ice at the Hotel was consistent with the prevailing weather conditions on the block and that the area outside the Hotel door, which Mr. Brown said was wet, would have been icy based on the prevailing weather conditions.  Response § III.B.2.  See, Response, Ex. 2 at 18.[5]

    While this evidence possibly could show a general expectation of the potential for ice to be in the area, that expectation, if one existed, is not sufficient evidence from which a fact-finder could reasonably infer that black ice where Mrs. Tameru fell was present in the Hotel's entryway or had been present for a sufficient period of time to provide the Hotel with constructive notice of a hazardous condition.  The Hotel presented uncontroverted evidence that Mr. Brown inspected the area of the fall at 9:17 p.m., approximately 1 hour and 15 minutes before Mrs. Tameru fell and

---

      [5]Mr. and Mrs. Tameru, through their expert, assert that because it was a certain outside temperature in the general area, the Hotel had sufficient notice that there was ice in the Hotel entryway.  However, the meteorological expert's opinion about general weather conditions in the vicinity of the Hotel is not sufficient to impute to the Hotel constructive notice of a specific dangerous or hazardous condition.  Likewise, the expert's opinion does not take into account the impact of the temperature emanating from the Hotel and the movement of people in and around the entryway upon the ground temperature and conditions in the area of this accident.

10

roughly the same amount of time after the air temperature in the general area allegedly reached the freezing point. Although Mr. Brown noted that it was cold outside, Plaintiffs have produced no evidence to indicate that he was aware of the exact temperature or that he had any knowledge that the sidewalk outside the Hotel door was freezing (if indeed it was) or could freeze. Rather, Mr. Herman, director of security of the Hotel, testified at deposition that he had *never* seen ice in the area where Mrs. Tameru fell, an area protected by a large overhang. Motion, Ex. N at 20.

In Mills v. Sears, the plaintiffs argued that the existence of snow and ice outside a store should have made the defendant aware of the hazardous condition that caused a fall immediately inside the store. See, 1998 U.S. Dist. LEXIS 5893. The court rejected the plaintiffs' argument, holding that a "description of the general weather conditions existing outside the store at the time of the fall, or preceding the fall is not sufficient evidence from which a jury could infer that a store owner had constructive notice of a hazardous condition inside the store." Id. at *6.

Although the accident at issue in this case occurred outside the Hotel, Mr. and Mrs. Tameru make an argument similar to that of the plaintiffs in Mills, namely that general weather conditions in the area can impute notice of a problem in a very specific location. The fact that the outside temperature in the vicinity of the Hotel may have fallen to 30 degrees shortly before this accident is not sufficient to put the Hotel on notice that the water (in an unspecified amount) on the ground at the precise location where Mrs. Tameru fell – the area just outside the Hotel's main entry doors and under a large overhang – was freezing.[6]

The Hotel has shown that no genuine issue of material fact exists as to whether it had actual or constructive notice of the hazardous condition and that it is entitled to judgment as a matter of

---

[6] The Court notes that, according to Plaintiffs' expert witness, the temperature was 30 degrees – only two degrees below the freezing point – when Mrs. Tameru fell. The accident did not occur many hours after the temperature allegedly first fell below freezing or on a night when extreme temperatures or winds prevailed.

law.

## IV. CONCLUSION

      For the reasons set forth above, the Court will grant summary judgment for Defendant on all claims.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALMAZ AND GIRMA TAMERU,** | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **W-FRANKLIN, L.P.,** | : | |
| **dba SHERATON PHILADELPHIA** | : | |
| **CENTER CITY,** | : | |
| Defendant. | : | NO. 07-1965 |

### ORDER

AND NOW this 11th day of September 2008, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 22) and Plaintiffs' Response (Doc. No. 24), Defendant's Reply (Doc. No. 30), Plaintiffs' Supplemental Response (Doc. No. 32), and Defendant's Response to Plaintiffs' Request to Supplement the Record (Doc. No. 33), it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED for the reasons set forth at length in the accompanying Memordandum.

The Clerk of Court is hereby instructed to CLOSE this case for all purposes, including statistics.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

13